# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONI DERSARKISSIAN,<br><br>                Petitioner,<br><br>     v.<br><br>KRISTI NOEM, Secretary, Department of Homeland Security; TODD LYONS, in his official capacity, Acting Director of U.S. Immigration and Customs Enforcement; PAM BONDI, Attorney General of the United States; JAMIE RIOS, Director, Los Angeles ICE Field Office; and FERETI SEMAIA, Warden, Adelanto ICE Processing Center,<br><br>                Respondents. | Case No. 5:25-cv-03482-SPG-BFM<br><br>**ORDER PARTIALLY GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AS TO RELEASE FROM CUSTODY [ECF NO. 4]** |

Before the Court is the Ex Parte Application for Temporary Restraining Order, (ECF No. 4 ("Application")), filed by Petitioner Roni DerSarkissian ("Petitioner"). The Court finds the matter suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court partially GRANTS the Application.

## I. BACKGROUND

Petitioner is a noncitizen currently detained at the Adelanto ICE Processing Center. (ECF No. 4-1, Ex. B). He requests the Court order Respondents Kristi Noem, Secretary of the Department of Homeland Security ("DHS"), Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Pam Bondi, Attorney General of the United States; Jamie Rios, Director of the Los Angeles ICE Field Office, and Fereti Semaia, Warden of the Adelanto ICE Processing Center, all in their official capacities, (collectively, "Respondents"), to facilitate his immediate release, restore the terms of his Order of Supervision, and return his California driver's license. *See* (App. at 13–14).

### A. Factual Background

The following facts are as provided in the exhibits filed in support of the Application, *see* (ECF No. 4-1), and as alleged in the Petition for Writ of Habeas Corpus, (ECF No. 1 ("Petition")).

Petitioner came to the United States from Iran as a refugee in 1989, when he was fourteen years old. (ECF No. 4-1, Ex. C ("DerSarkissian Decl.") ¶ 1). He subsequently obtained permanent resident status, (*id.*), and has resided continuously in the United States for the past thirty-five years, (Pet. ¶ 20). In 2008, Petitioner married his wife, who is a U.S. citizen. (DerSarkissian Decl. ¶ 9). Together, they have two children, both of whom are also U.S. citizens. (*Id.*).

On February 20, 1998, Petitioner was convicted of assault of a deadly weapon, in violation of California Penal Code § 245(a)(1), and was sentenced to two years in prison. (ECF No. 4-1, Ex. K). This conviction was later vacated on December 8, 2025, as legally invalid under California Penal Code § 1473.7(a)(1) for prejudicial error because Petitioner lacked the ability to meaningfully understand, defend against, or accept any potential or resulting adverse immigration consequences during the proceedings. (*Id.*).

On January 19, 2000, Petitioner was ordered removed by an immigration judge based on the February 20, 1998, aggravated felony conviction pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), and he did not appeal this decision. (DerSarkissian Decl. ¶ 3);

(Pet. ¶¶ 24, 25). Petitioner spent the next two years in immigration custody and was ultimately released under an Order of Supervision on March 11, 2002, because he was not removed within that two-year period. (DerSarkissian Decl. ¶ 3); *see* (ECF No. 4-1, Ex. F ("2002 OSUP")). As a part of the 2002 OSUP, Petitioner was required to report in person on the first business day of each month to the Deportation Section of the U.S. Department of Homeland Security Los Angeles Field Office, unless provided written permission to report otherwise. (2002 OSUP). Petitioner represents that he did not miss any appointments. (DerSarkissian Decl. ¶ 4). For example, Petitioner completed his check-in with the Los Angeles DHS Field Office on May 20, 2025, and his next check-in was scheduled for January 14, 2026. (*Id.* ¶ 5).

On June 23, 2025, Petitioner was arrested by armed immigration agents outside his home. (*Id.*). He was informed that he was arrested because of the twelve-day war between Israel and Iran. (*Id.*). When he was arrested, officers took Petitioner's California driver's license. (*Id.* ¶ 6).

During his detainment, Petitioner applied for travel documentation from Iran. (*Id.* ¶ 7). On September 15, 2025, the Interests Section of the Islamic Public of Iran, Embassy of Pakistan (the "Embassy"), informed the Department of Homeland Security that it could not issue a travel document for Petitioner because the Embassy lacked Petitioner's original Iranian birth certificate and original Iranian passport. (ECF No. 4-1, Ex. D). Because Petitioner lacks both these documents, however, the Embassy is unable to issue travel documentation. (DerSarkissian Decl. ¶ 7).

B.  **Procedural History**

On December 22, 2025, Petitioner filed the Petition for Writ of Habeas Corpus and Application. (Pet.); (App.). Petitioner asserts two causes of action in his Petition: (1) that his detention for more than 180 days violates 8 U.S.C. § 1231(a)(6); and (2) his indefinite detention violates the Due Process Clause of the Fifth Amendment. *See* (Pet.). In the Application, Petitioner requests immediate release from ICE custody, that he be returned to the terms of the Order of Supervision issued on March 11, 2002, and return of his

California's Driver's license upon release. (App. at 13–14). Upon review of the Petition and Application, the Court set a briefing schedule on the Application and ordered that Petitioner could not be removed from the Central District of California pending further order of the Court. (ECF No. 6). Respondents filed an Opposition to the Application on December 23, 2025, in which they requested an additional fourteen days to respond to the Application. (ECF No. 7 ("Opp.")). Petitioner filed a Reply on December 23, 2025. (ECF No. 8 ("Reply")).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs requests for TROs. Under Rule 65, a temporary restraining order may be issued without notice to the adverse party only if "immediate and irreparable injury, loss, or damage will result to the applicant" if the order does not issue. Fed. R. Civ. P. 65(b). The "stringent restrictions" imposed by "Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 438–39 (1974). Thus, ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.*

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation omitted). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest.

*Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter*, 555 U.S. at 20). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

The court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted when deciding an application for a temporary restraining order. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties.") (citations omitted); *Harper v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction); *BOKF, NA v. Estes*, 299 F. Supp. 3d 1117, 1122 (D. Nev. 2018). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *Id.*

### III. DISCUSSION

Petitioner argues that he is entitled to injunctive relief because his removal under 8 U.S.C. § 1231(a)(6) is not reasonably foreseeable, and his continued, indefinite detention violates the Fifth Amendment's Due Process Clause. (App. at 8–11).

The Court finds that the *Winter* factors weigh in favor of Petitioner regarding his claim under 8 U.S.C. § 1231(a)(6), as interpreted in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and partially GRANTS the Application.[1]

**A.    *Winter* Factors**

    1.    <u>Likelihood of Success on the Merits</u>

"Likelihood of success on the merits is the most important factor" when evaluating a TRO request, and this is "especially true for constitutional claims." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023) (internal quotation marks and citation omitted). Plaintiff contends that his detention exceeds the permissive removal period set forth 8 U.S.C. § 1231(a)(6) based on the Supreme Court's interpretation of the statute in *Zadvydas*, justifying his immediate release.

Section 241(a) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1231(a), "authorizes the detention of noncitizens who have been ordered removed from the United States." *Johnson v. Artega-Martinez*, 596 U.S. 573, 575 (2022). Specifically, section 1231(a)(1)(A) requires the government to secure the removal of a noncitizen ordered removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). Known as the "removal period," the ninety-day period commences on the latest of the following:

    (i)    The date the order of removal becomes administratively final.

    (ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    (iii)    If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* §§ 1231(a)(1)(B)(i)–(iii).

---

[1] The Court declines to address Petitioner's due process claim at this juncture. *See Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *5 (C.D. Cal. Aug. 26, 2025) ("[A] showing of a likelihood of success on even just one claim is sufficient for injunctive relief as long as that claim would support the injunctive relief sought.") (internal quotation marks omitted and cleaned up).

After this ninety-day removal period, a noncitizen "may be released under terms of supervision," or may be detained under the categories delineated under section 1231(a)(6). *Johnson*, 596 U.S. at 575, 578–79. These categories are: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Id.* at 578–79 (quoting 8 U.S.C. § 1231(a)(6)).

Still, section 1231(a) "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A statute that authorized as such "would raise a serious constitutional problem"; rather, detention may extend beyond the ninety-day removal period for only "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689–90. In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of up to six months. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the government fails to rebut that showing, the noncitizen must be released. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (describing the government's burden as articulated in *Zadvydas*).

At the outset, the Court notes that it is unclear under what authority Petitioner is detained, given that the conviction that underlies his order of removal was vacated on December 8, 2025. (DerSarkissian Decl. ¶ 3); (ECF No. 4-1, Ex. K); *see Wiedersperg v. I.N.S.*, 896 F.2d 1179, 1182 (9th Cir. 1990) ("[T]he nullification of a conviction upon which deportability is premised deprives deportation of a legal basis.").

Regardless, Petitioner has been continuously detained since June 23, 2025, (DerSarkissian Decl. ¶ 5), and, as of the filing of the Application, six months have lapsed. Further, from the Court's review of the record, Petitioner's removal to Iran is highly unlikely. *See* (App. at 6, 9–10). Specifically, Petitioner has submitted a letter sent on September 15, 2025, by the Embassy of Pakistan, Interests Section of the Islamic Public of

Iran, to the Department of Homeland Security, stating that an Iranian travel document could not be issued for Petitioner. (ECF No. 4-1, Ex. D). According to the letter, without Petitioner's original Iranian birth certificate and original Iranian passport, the Embassy could not begin the process of verifying Petitioner's claim to Iranian citizenship and could not issue an Iranian travel document for him. (*Id.*). Petitioner also represents that he does not have original copies of either document, and, thus, an Iranian travel document cannot be issued for him under current Iranian regulations. (DerSarkissian Decl. ¶ 7); (App. at 9–10). Based on the September 15, 2025, letter from the Embassy, and Petitioner's representation that he lacks original copies of his Iranian identification documents, the Court finds Petitioner has met his burden of demonstrating that there is good reason to believe there is no significant likelihood of his removal to Iran in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701; *see also Bunnell v. Noem, et al*, No. 2:25-cv-02259-GMN-EJY, 2025 WL 3707588, at *3–*4 (D. Nev. Dec. 22, 2025) (recognizing that a detained noncitizen's removal to Iran was not reasonably foreseeable because the Iranian consulate lacked records confirming that the noncitizen was an Iranian citizen).

    Respondents, for their part, have not rebutted Petitioner's showing. In their Opposition, Respondents assert that they "have been removing Iranian nationals to Iran." (Opp. at 2). However, this general statement of Respondents' efforts to remove Iranian nationals to Iran does not speak to Respondents' efforts to remove Petitioner specifically or meaningfully demonstrate the likelihood of them being able to do so. Nor do Respondents contend that Petitioner will be removed to a country other than Iran. (Opp. at 2).[2] Under the standard set forth in *Zadvydas*, Respondents have not provided evidence indicating that Petitioner's removal is likely in the reasonably foreseeable future. *See, e.g.*,

---

[2] Respondents request additional time to provide "more information concerning the status of Petitioner's travel documents" as it relates to his removal to Iran. *See* (Opp at 2). In light of the relief requested in the Application, the Court denies Respondents' request. *See* (ECF No. 9 (vacating hearing set for December 24, 2025)).

*Luu v. Bowen, et al.*, No. 5:25-cv-03145-MEMF-SP, 2025 WL 3552298, at *7–*8 (C.D. Cal. Dec. 11, 2025) (finding that the petitioner was likely to succeed on the merits of his *Zadvydas* claim because it was unclear when the travel documents for his designated country of removal would be issued); *see also Asfestani v. Current or Acting Field Office Director, San Francisco Field Office, United States Immigration and Customs Enforcement*, No. 1:25-cv-1562-SCR, 2025 WL 3677321, at *5 (E.D. Cal. Dec. 18, 2025) (the government's lack of explanation as to the "steps ICE has been taking to attempt to secure petitioner's removal since it redetained him nearly six months ago" indicated that "there [was] no significant likelihood of petitioner's removal in the reasonably foreseeable future").

Therefore, the Court finds that Petitioner has shown that he is likely to succeed on the merits of his *Zadvydas* claim that his continued detention, absent a likelihood of removal in the reasonably foreseeable future, is unreasonable.

### 2. Irreparable Harm

Petitioner has shown that absent injunctive relief in the form of his immediate release, he continues to suffer irreparable injury. "[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury," including those "imposed on anyone subject to immigration detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (citing *Melendres v. Arpaio*, 694 F.3d 990, 1002 (9th Cir. 2012)). Not only is Petitioner deprived of due process under the Fifth Amendment, his continued detention impacts his physical and emotional health. *See Barker v. Wingo*, 407 U.S. 514, 532–33 (1972) (Incarceration "has a detrimental impact on the individual" because "it often means loss of a job" and "disrupts family life."). According to Petitioner, he is experiencing significant pain and discomfort while detained because he is not receiving appropriate medical care for his prostate infection. (DerSarkissian Decl. ¶ 13). Petitioner also asserts that his family suffers financial and emotional harm from his detainment. (*Id.* ¶¶ 9–12). Before his detention, Petitioner was the caretaker for his eighty-year-old mother, who was diagnosed with Alzheimer's disease. (*Id.* ¶ 10). His family was required to hire full-time help to care

for his mother in Petitioner's absence at a significant financial cost. (*Id.*). Petitioner's wife also now suffers from depression due to his detention. (*Id.* ¶ 11). Thus, Petitioner suffers irreparable harm from his unreasonable detention, and his family bears the financial and emotional harm from his absence.

### 3. Balance of the Equities and Public Interest

The balance of equities and public interest merge when the Government is the party opposing the relief sought. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).

In sum, Petitioner has shown that he is likely to succeed on the merits of his *Zadvydas* claim, wherein his continued detention under 8 U.S.C. § 1231(a)(6) without a significant likelihood of removal in the reasonably foreseeable future raises due process concerns. He has also demonstrated that he and his family will suffer significant hardship absent some injunctive relief. (DerSarkissian Decl. ¶¶ 9–13). In the context of immigration detention proceedings implicating removal, though there is a "public interest in prompt execution of removal orders," *Nken*, 556 U.S. at 436, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," *Alabama. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021). On balance, all *Winter* factors weigh in Petitioner's favor and the Court GRANTS, in part, Petitioner's Application for a Temporary Restraining Order based on his Procedural Due Process Claim insofar as it seeks relief under 8 U.S.C. § 1231(a)(6).

### B. Bond

Petitioner also requests the Court waive the bond requirement under Federal Rule of Civil Procedure 65(c). (App. at 13). Under Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found

to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (recognizing that district courts have "discretion as to the amount of security required, if any"). Here, Respondents are unlikely to incur significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights." *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-cv-05423-HDV-E, 2025 WL 2640421, at *17 n.16 (C.D. Cal. Sept. 10, 2025) (quoting *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996)). The Court therefore waives the bond requirement and no security is required. *E.g.*, *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 n.3 (C.D. Cal. Aug. 28, 2025) (dispensing of bond requirement in issuing a preliminary injunction order to release petitioner from immigration detention); *Aceros v. Kaiser*, No. 25-cv-06924-RMI-EKL, 2025 WL 2453968, at *3 (N.D. Cal. Aug. 16, 2025) (dispensing of bond requirement in granting a temporary restraining order).

## IV. CONCLUSION

For the foregoing reasons, the Court partially GRANTS the Application and ORDERS as follows:

1. Respondents are ORDERED to release Petitioner from custody as soon as reasonably practicable and return him to the Order of Supervision issued on March 11, 2002, upon his initial release.

2. Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue at an in-person hearing on Wednesday, January 7, 2026, at 9:00 a.m. in Courtroom 5C. Petitioner shall file an opening brief and related submissions no later than Wednesday, December 31, 2025, at 5:00 p.m. Respondents shall file an opposition no later than Tuesday, January 6, 2025, at 12:00 p.m.

//
//
//

3. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED: December 29, 2025

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE